UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTOPHER SCOTT CRAWFORD,<br><br>Defendant. | CASE NO. 2:22-cr-00087-JHC<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant's Motion to Dismiss Count 1 (Cyberstalking). Dkt. # 33. Having considered the submissions in support of and in opposition to the motion, the applicable law, and the balance of the case file, the Court DENIES the motion.

Defendant Christopher Scott Crawford is charged with one count of Cyberstalking in violation of 18 U.S.C. § 2261A(2)(B) and one count of Threats by Interstate Commerce in violation of 18 U.S.C. § 875(c), based on numerous communications he allegedly sent to K.C. that are summarized in the complaint. *See* Dkt. # 1. Mr. Crawford seeks dismissal of count 1 of the indictment, arguing that the statute is facially overbroad and both content- and viewpoint-based. Dkt. # 33 at 1. Mr. Crawford does not bring an as-applied challenge at this time. *Id.*

ORDER DENYING DEFENDANT'S - 1

     i.      *Overbreadth*

The overbreadth doctrine is a constitutional anomaly. "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber,* 458 U.S. 747, 767 (1982). But the Supreme Court has "altered its traditional rules of standing" in First Amendment cases in response to the "concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Virginia v. Hicks,* 539 U.S. 113, 119 (2003). Thus, even when a law may be applied to an individual in a constitutionally unobjectionable way, if that individual can show that the law punishes a "substantial" amount of protected free speech, "judged in relation to the statute's plainly legitimate sweep," the proper remedy is to invalidate all enforcement of that law. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Yet invalidating a law as overbroad is "strong medicine" that courts should "use sparingly. *Id.* at 613. Before striking down a law, courts must ensure that any overbreadth is both "real" and "substantial." *Id.* at 615.

The Supreme Court has cautioned that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Hicks*, 539 U.S. at 124. The Court therefore begins by ascertaining 18 U.S.C. § 2261A(2)(B)'s aim, as well as its potential for banning protected speech. *See United States v. Williams,* 553 U.S. 285, 293 (2008) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."). 18 U.S.C. § 2261A(2)(B) penalizes whoever:

MOTION TO DISMISS - 2

> [W]ith the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to [that] person [or an immediate family member, spouse, or intimate partner of that person.]

A "course of conduct" is a "pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).

By its own terms, the statute regulates not speech but conduct, or "courses of conduct." And although it does name common means of communication among the possible facilities of interstate commerce—thus potentially reaching expressive conduct—it also covers large swaths of unprotected conduct. For example, as noted by the First Circuit:

> A defendant could send envelopes of unknown white powder to the victim in the mail; he could send the victim nude photographs of herself; he could repeatedly infect the victim's computer with viruses; he could open unwanted on-line dating profiles under the victim's identity; he could take out unwanted loans in the victim's name; or he could arrange every day for deliveries to be made at the victim's home at all hours of the night.

*United States v. Ackell*, 907 F.3d 67, 73 (1st Cir. 2018). And the statute contains a catch-all provision clarifying that one may take to "any other facility of interstate or foreign commerce" in violating it. 18 U.S.C. § 2261A(2)(B). Thus, the text of the statute supports the conclusion that it targets conduct and not speech.

Further, the Ninth Circuit has analyzed the statute and found that "the proscribed acts are tethered to the underlying criminal conduct and not to speech." *United States v. Osinger,* 752 F.3d 939, 944 (9th Cir. 2014). The Court acknowledges that 18 U.S.C. § 2261A(2)(B) has been amended since *Osinger* was decided. But the amendments do not add or change language pertaining to the acts proscribed by the statute. Therefore, *Osinger*'s holding that the statute

MOTION TO DISMISS - 3

targets conduct and not speech is binding. The Court therefore concludes that 18 U.S.C. § 2261A(2)(B) targets conduct and not speech.

The Court next addresses the extent to which § 2261A(2)(B) criminalizes protected speech. Perhaps a statute that does not target speech may be facially overbroad under the First Amendment if the conduct it proscribes is sufficiently imbued with elements of communication. *See, e.g.*, *Hicks,* 539 U.S. at 124; *Green v. Miss United States of America LLC,* 52 F.4th 773, 780 (9th Cir. 2022). But it is Mr. Crawford's burden to demonstrate, "from the text of [the law] and from actual fact," that the statute could apply to a substantial amount of protected speech, in an absolute sense and in relation to its many legitimate applications. *Hicks,* 539 U.S. at 122.

The First Amendment does not protect all forms of speech; exceptions exist for a small number of "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *United States v. Stevens,* 559 U.S. 460, 468–89 (2010) (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72 (1942)). Two such exceptions are pertinent here: "true threats," *see Virginia v. Black,* 538 U.S. 343, 359 (2003), and "speech integral to criminal conduct," *see United States v. Alvarez,* 567 U.S. 709, 717 (2012) (citing *Giboney v. Empire Storage & Ice Co.,* 335 U.S. 490 (1949)). A "true threats" occurs when a speaker "means to communicate a serious expression of and intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black,* 538 U.S. at 359. Courts also recognize "speech integral to criminal conduct" as falling outside the protection of the First Amendment because "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney,* 336 U.S. at 502. Because the Ninth Circuit determined that the pre-amendment version of the statute was "not facially invalid under the First Amendment," *see*

MOTION TO DISMISS - 4

*Osinger,* 753 F.3d at 944, the question here is whether the amendments allow the statute to reach speech that is neither a true threat nor integral to criminal conduct (i.e., protected speech).

The 2013 amendments to 18 U.S.C. § 2261A added the alternative intent element of "intent to intimidate" and changed the requirement that a defendant "engage in a course of conduct that causes substantial distress" to the present requirement that the defendant "engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress" to the victim. § 2261A(2)(B). Mr. Crawford argues that the intent element of the amended statute renders it overbroad in violation of the First and Fifth Amendments. He cites *States v. Sryniawski,* an Eighth Circuit case involving an "as applied" challenge, where the court found that "harass" can mean simply "to vex, trouble, or annoy continually or chronically," and "intimidate" can mean "to make timid or fearful." 48 F.4th 5983, 587 (8th Cir. 2022) (citing Webster's Third New International Dictionary of the English Language Unabridged 1031 (1993), 1184 (2002)).[1] Further, Mr. Crawford points out that Section 2261A(2)(B) now criminalizes speech that would be reasonably expected to cause substantial emotional distress, even if it were never received by the person to whom it was directed, and even if the intended recipient did not find the speech distressing. He argues that this amendment creates a profound chilling effect because "even speakers who do not speak with the intent to distress might reasonably fear that a jury could infer such intent from their offensive of politically unpopular speech." Dkt. # 33 at 9.

---

[1] Mr. Crawford lists individuals who he argues would be guilty of committing cyberstalking, including "Former President Trump, when he used Twitter to demean and belittle others, such as when he attached former FBI lawmaker Lisa Page, causing her severe distress," "The publishers of a cartoon newspaper who post offensive, but arguable satirical, portraits of the prophet Muhammad, leading many Muslims to feel substantial emotional distress," and several others. Dkt. # 33 at 11.

MOTION TO DISMISS - 5

The Court acknowledges that the intent element of the statute, if read broadly as Mr. Crawford suggests, would raise constitutional problems because the broader definitions of "harass" and "intimidate" can describe nonviolent and nonthreatening speech. But harassment and intimidation, narrowly construed, are unprotected. As the Third Circuit noted in *U.S. v. Yung*, "Intimidation, in the constitutionally proscribable sense of the word . . . plac[es] the victim *in fear of bodily harm or death*." 37 F.4th 70, 78 (3d Cir. 2022). And "harassment" can be narrowly read to mean "criminal harassment, which is unprotected because it constitutes true threats or speech that is integral to proscribable criminal conduct." *Id.* at 80 (citing *Ackell*, 907 F.3d at 76). Reading the statute narrowly ensures that protected speech largely escapes the law's reach and avoids the "strong medicine" of invalidating the statute as facially overbroad. *Broadrick,* 413 U.S. at 613. The Court notes that every circuit court that has addressed a facial overbreadth challenge to the amended version of § 2261A(2)(B) has held the same. *See Yung,* 37 F.4th at 69; *United States v. Fleury,* 20 F.4th 1353, 1362-63 (11th Cir. 2021); and *Ackell*, 907 F.3d at 77.

Lastly, Mr. Crawford is correct that the "reasonable person standard" embedded in the amended harm element broadens the statute significantly and might allow a conviction where no harm has occurred. *See* Dkt. # 33 at 9. However, he fails to articulate how this amendment implicates the First Amendment.

    ii.    *Content- and viewpoint-based restriction*

Mr. Crawford argues in the alternative that the statute is an impermissible content- and viewpoint-based restriction because it "regulates speech based on its content and reactions it elicits in others." Dkt. # 33 at 12. He argues that the statute should be subject to strict scrutiny,

MOTION TO DISMISS - 6

and thus must serve a compelling government interest and be narrowly tailored to meet that interest.  *Id.* (citing *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011)).

In assessing such an argument, the Supreme Court has instructed that we must first "consider[] whether a law is content neutral before turning to the law's justification or purpose." *Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015).  But as the First Circuit in *Ackell* recognized when faced with a similar argument, "implicit in this analysis is also a "step zero": does the law in question target speech at all?"  *Ackell*, 907 F.3d at 77 (citing *McCullen v. Coakley,* 573 U.S. 464, 476 (2014)).  Because the Court is bound by the Ninth Circuit's holding in *Osinger,* this question has already been answered in the negative.  As a result, it cannot be that § 2261A(2)(B) is an impermissible content or viewpoint-based restriction on speech.

For these reasons, the Court DENIES Defendant's motion to dismiss.  18 U.S.C. § 2261A(2)(B) does not violate the First Amendment on its face.  Mr. Crawford is not precluded from challenging the statute as applied to him.

Dated this 30th day of January, 2023.

John H. Chun
United States District Judge